IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HERITAGE FENCE COMPANY** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 24-2650 |
| | : | |
| **COLE MALIN**, *et al.* | : | |

**MEMORANDUM**

**MURPHY, J.**                                                                                                       **December 9, 2024**

      This case involves a construction company, Heritage Fence, suing its former employee, Cole Malin, and Mr. Malin's new employer, a competing construction company called Keystone. Heritage Fence alleges trade secret, tort, and contract claims against Mr. Malin and Keystone relating to actions they took after Heritage Fence terminated Mr. Malin's employment. In short, Heritage Fence alleges that Mr. Malin took trade secrets to Keystone and used the trade secrets to develop Keystone's business in violation of various agreements Mr. Malin had with Heritage Fence.

      Mr. Malin and Keystone move to dismiss the trade secret and contract claims, arguing that Heritage Fence did not plausibly allege trade secret misappropriation and that the contract at issue is unenforceable. We grant the motion to dismiss as to the trade secret claims, though the dismissal is without prejudice, and we deny the motion as to the breach of contract claim.

**I.   Background**

      Heritage Fence is a fencing installation company. In October 2021, it hired Mr. Malin as a Commercial Estimator and executed two agreements with him: a confidentiality agreement and a "non-compete and non-solicitation" agreement (the "post-employment restrictive covenants"). DI 1 ¶¶ 10, 11. Heritage Fence claims that its employees are entrusted with confidential and

proprietary information, as well as trade secrets, during their employment, necessitating post-employment restrictive covenants.  *Id.* ¶¶ 9-11.  According to Heritage Fence, Mr. Malin had access to some of this confidential information during his employment.  *Id.* ¶ 10.  The post-employment restrictive covenants are purportedly necessary "because if competitors poach Plaintiff's employees with impunity, they would unfairly appropriate the significant investment of time and expense made by Plaintiff to develop its employees and customer relationships."  *Id.* ¶ 11.

 Heritage Fence terminated Mr. Malin on February 11, 2024.  *Id.* ¶ 12.  As the complaint tells it, Mr. Malin then violated his post-employment restrictive covenants, *id.* ¶¶ 13, 15, which are purportedly in effect until February 11, 2027, *id.* ¶ 12.  In short, Heritage Fence alleges that Mr. Malin went to a competitor called Keystone and solicited "quotes to bid fencing, including to [Heritage Fence's] existing customers and through [Heritage Fence's] vendors."  *Id.* ¶¶ 13, 15.  Heritage Fence says this violates the post-employment restrictive covenants.  *Id*.

 The only specific allegations as to solicitation pertain to two of Heritage Fence's longstanding vendors, Tymetal and Stephens Pipe, which reportedly alerted Heritage Fence that they were contacted by defendants to solicit business.  *Id.* ¶ 16.  Heritage Fence demanded that Mr. Malin cease and desist and put Keystone on notice of the purported violations, but Mr. Malin apparently did not stop.  *Id.* ¶ 18.  The complaint does not include specific allegations about defendants reaching out to Heritage Fence's customers.

 Heritage Fence asserted claims based on the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b) (Count I); the Uniform Trade Secrets Act of 2004, 12 Pa.C.S. §5301 *et seq.* (Count II); unjust enrichment (Count III); unfair competition (Count IV); civil conspiracy (Count

2

V); breach of contract (Count VI); and tortious interference with prospective economic advantage (Count VII).

Mr. Malin and Keystone, together, filed a motion to dismiss counts I, II, and VI of the complaint (i.e., the trade secret claims and the breach of contract claim). DI 10 at 1, 6. They do not seek dismissal of the claims related to unjust enrichment, unfair competition, civil conspiracy, or tortious interference with prospective economic advantage. Mr. Malin and Keystone argue that Heritage Fence failed to meet the *Twombly*/*Iqbal* plausibility standard on its trade secret claims by failing to sufficiently allege the existence of a trade secret or how defendants misappropriated or used the trade secrets. *Id.* at 7-14. Additionally, Mr. Malin argues that the breach of contract claim should be dismissed because the non-compete agreement is unenforceable in light of Heritage Fence terminating Mr. Malin. *Id.* at 14-17. Heritage Fence opposed the motion to dismiss, arguing the trade secret claims were sufficiently pled and the non-compete agreement is enforceable.

## II. Standard of review

For a complaint to survive a motion to dismiss, plaintiffs must make well-pleaded, nonconclusory allegations that state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679-680 (2009). Pleadings fail to meet the plausibility standard if they offer only "labels and conclusions" or "a formulaic recitation of the elements." *Id*. at 678. That discovery has not commenced does not excuse a lack of alleged facts in pleadings. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quotations omitted) (plaintiffs must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element"); *Bell Atlantic v. Twombly,* 550 U.S. 544, 561 (2007) (quotations omitted) (reasoning that "a wholly conclusory statement of claim" should not "survive a motion to dismiss whenever

the pleadings left open the possibility that a plaintiff might later establish some set of [undisclosed] facts to support recovery").

Assessing *Twombly* and *Iqbal* plausibility is a three-step process. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, we determine the elements of the claim. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). Second, we identify conclusory allegations, which are not entitled to a presumption of truth. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Third, we assume the veracity of any well-pleaded factual allegations to "determine whether they plausibly give rise to an entitlement to relief." *Id*.

## III.   Analysis

Mr. Malin and Keystone seek dismissal of the trade secret claims, and Mr. Malin seeks dismissal of the breach of contract claim.[1] DI 10 at 1. We first address the trade secret claims and find that Heritage Fence failed to plausibly allege a misappropriation of a trade secret under federal law and Pennsylvania law. Then we analyze the breach of contract claim, finding that Heritage Fence passed the plausibility standard and sufficiently alleged a breach of contract as to the non-compete agreement with Mr. Malin.

### A.  We dismiss the trade secret claims because Heritage Fence failed to plausibly plead misappropriation of a trade secret.

Mr. Malin and Keystone argue that Heritage Fence's trade secret claims should be dismissed because Heritage Fence failed to plead the existence of a trade secret or how it was misappropriated. *Id.* at 7. We agree. Federal trade secret misappropriation under 18 U.S.C. § 1836(b)(1) requires:

> (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to

---

[1] The breach of contract claim is raised only against Mr. Malin. DI 1 at 13.

> keep secret, *id.* § 1839(3); (2) that "is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]" *id.* § 1836(b)(1); and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret, *id*. § 1839(5).

*Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). Similarly, the elements of Pennsylvania trade secret misappropriation are: "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Latuszewski v. VALIC Fin. Advisors, Inc.*, 393 F. App'x 962, 965 (3d Cir. 2010) (quoting *Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003)).

*Oakwood* is illustrative. Oakwood was a pharmaceutical company that focused on hard-to-develop drugs and that sued its former Senior Scientist and Vice President of Product Development, Dr. Thanoo, and the company he joined after his departure. 999 F.3d at 896-98. Dr. Thanoo specialized in microsphere technology, and Oakwood invested "more than $130 million, two decades, and the efforts of dozens of full-time employees" in its "microsphere project." *Id.* at 896-97. To protect itself from misuse or disclosure of proprietary information, Oakwood required Dr. Thanoo to sign a non-disclosure agreement and related invention agreements as conditions of his employment. *Id.* at 896. Dr. Thanoo eventually left Oakwood and joined a new employer, which quickly began marketing its own microsphere technology products, despite having no prior experience in the space. *Id.* at 897-98. Oakwood sued Dr. Thanoo and his new employer for trade secret misappropriation, breach of contract, and tortious interference with contractual relations.

The district court allowed Oakwood to amend its complaint several times and eventually dismissed Oakwood's third amended complaint without leave to amend due to insufficient

allegations of harm and misappropriation. *Oakwood Labs., LLC v. Thanoo*, No. 17-5090, 2019 WL 5420453, *4 (D.N.J. Oct. 23, 2019), *vacated*, 999 F.3d 892 (3d Cir. 2021).

On appeal, the Third Circuit vacated the district court's decision and held that the third amended complaint was sufficiently pled. *Oakwood*, 999 F.3d at 896. The third amended complaint contained sixteen exhibits and specific allegations as to why the defendants' products could not have been developed without Oakwood's trade secrets, including that defendants had no prior experience in microsphere technology before hiring Dr. Thanoo and that it took Oakwood nearly twenty years and $130 million to develop in that space. *Id.* at 902.

The Third Circuit held that this was enough to plead the existence of trade secrets, misappropriation, and harm. Oakwood had sufficiently identified what the trade secrets were and alleged facts supporting their "protected status." *Id.* at 905-07. A complaint need not spell out the trade secrets in detail, but it must identify the trade secret with sufficient specificity to separate it from general knowledge and put the defendant "on notice of the bases for the claim being made against it" (i.e., allow the defendant to formulate a defense). *Id.* at 906. This is a fact-specific inquiry that must be determined on a case-by-case basis. *Id.*

A complaint passes the plausibility test and shows that an alleged trade secret has "protected status" if it identifies reasonable measures the company took to keep the information secret and that the information derived "independent economic value, actual or potential, from not being generally known, and not being readily ascertainable through proper means" by others. *Id.* at 905 (quoting 18 U.S.C. § 1839(3)). In *Oakwood*, the plaintiff sufficiently backed up its allegations with specific examples, including documents filed under seal, and specified the contents of documents containing trade secrets. *Id.* at 907. The Third Circuit concluded that those allegations put the defendants on notice of the trade secrets alleged to have been

6

misappropriated. *Id.* at 906-07. However, the Third Circuit cautioned "that care must be taken to not allow a plaintiff in a trade secret misappropriation case to make generalized claims that leave a defendant wondering what the secrets at issue might be." *Id.* at 907.

Heritage Fence's allegations fail to meet the *Oakwood* standard of a trade secret with "protected status." First, Heritage Fence merely described its trade secrets with a list of general business terms, such as "customer agreements; customer service information; intellectual property; names of customer contacts and the identities of their decision-makers; internal personnel and financial information; information about customers that is not generally known to the public; information about the profitability of particular customers; vendor agreements; names of vendor contacts; information about vendors that is not generally known to the public; labor rates; estimating matrices; development plans; proposal templates; and marketing techniques." DI 1 at 7. It is not apparently why this information is non-public. For example, customer service information may be publicly available on a website and names of vendor contacts may be well known in the industry. Heritage Fence fails to allege any basis to consider this information a secret in this industry.

Furthermore, Heritage Fence fails to allege the trade secrets with specificity. We, and more importantly defendants, are not on notice as to what constitutes Heritage Fence's intellectual property, or even what domain of the business this alleged intellectual property pertains to. The same goes for information about customers and vendors "that is not generally known to the public." *Id.* What sort of information? In contrast, Oakwood's complaint described particular trade secrets, gave examples, and appended numerous exhibits. *Oakwood*, 999 F.3d at 907. And as the Third Circuit explained, "Oakwood gave a very precise example by pointing to a particular document . . . that it had disclosed . . . under a confidentiality agreement,

7

and it specified the contents of that document as containing trade secrets." *Id*. Of course there is no requirement to file trade secret information under seal with a complaint, but Heritage Fence's hand-waving did nothing to put the defendants on notice of the relevant trade secrets alleged to have been misappropriated.

Next, there is nothing in the complaint fairly suggesting that Heritage Fence took reasonable measures to safeguard the secrecy of its purported trade secrets or that the trade secrets carried independent economic value. In its opposition to the motion to dismiss, Heritage Fence argues that (1) requiring an employee to sign a confidentiality agreement and (2) labeling some documents as confidential is enough. DI 12-1 at 10. However, Heritage Fence has not pled that documents were specifically identified as confidential, much less identified the specific confidential documents at issue. In contrast, the *Oakwood* complaint alleged trade secrets with sufficient specificity, including the particular business unit at issue and "a very precise example by pointing to a particular document." 999 F.3d at 907. Heritage Fence's allegations do not reach this standard.

Third, Heritage Fence failed to adequately allege that Mr. Malin and Keystone used, and therefore misappropriated, any trade secrets. We note that the Third Circuit has construed "use" in the federal trade secret statute expansively and allows proof through circumstantial evidence. *Oakwood*, 999 F.3d at 910-12. The complaint in *Oakwood* met the expansive "use" standard through circumstantial evidence when it alleged that (1) Dr. Thanoo's new employer chose not pursue a collaboration with Oakwood after learning about its trade secrets, (2) Dr. Thanoo's new employer previously lacked experience in the technology Dr. Thanoo had expertise in, (3) defendants had access to Oakwood's trade secrets, and (4) defendants inexpensively and rapidly developed this technology compared to the amount of money and time it took Oakwood to do the

same. *Id*. at 911-12. Accordingly, there was a plausible inference that Dr. Thanoo and his new employer misappropriated Oakwood's trade secrets. *Id.* at 912-13. Because Oakwood sufficiently pled misappropriation, the Third Circuit found that the requirement of "harm" was also met because "[b]y statutory definition, trade secret misappropriation is harm." [2] *Id.* at 913; *see also* 18 U.S.C. § 1839(3), (5).

Understandably, this part of a complaint for trade-secret misappropriation will often rely on reasonable inferences. But in contrast to *Oakwood*, where the third amended complaint gave key factual context allowing for an inference of misappropriation, Heritage Fence lacks such context. The only non-conclusory factual allegation before us is that Tymetal and Stephens Pipe, two of Heritage Fence's vendors, contacted Heritage Fence letting it know that Mr. Malin and Keystone solicited their business. DI 1 ¶ 16. But the leap from there to trade-secret misappropriation goes well beyond inference and into speculation. Was this such a highly specialized industry that these vendors were secret? Are there good reasons to infer that Mr. Malin used Heritage Fence's trade secrets when he reached out to those vendors? What about

---

[2] Trade secrets' value derives from secrecy, economic value, and exclusive property rights. *Oakwood*, 999 F.3d at 913. Once disclosed to a competitor, trade secrets' value decreases. *Id.* at 913-14. Loss in value from a property rights violation intrinsically is harm. *Id.*

9

customers? We are left to guess. For these reasons, we grant Mr. Malin and Keystone's motion to dismiss the trade secret claims.³ The dismissal is without prejudice. ⁴

### B. The breach of contract claim survives the motion to dismiss because the allegations do not compel a finding of unenforceability.

Mr. Malin argues that Heritage Fence's breach of contract claim should be dismissed because there is no enforceable contract. We disagree. Federal courts apply state law to state breach of contract issues in supplemental jurisdiction. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008) (under the *Erie* doctrine, "if the matter is substantive, the court must apply the substantive law of the forum state").

The parties agree that the Pennsylvania Supreme Court's decision in *Hess* is the starting point: post-employment restrictive covenants are enforceable when they are (1) ancillary to an employment relationship between employee and employer; (2) supported by adequate consideration; (3) reasonably limited in duration and geographic extent; and (4) designed to protect the legitimate business interest of the employer. DI 10 at 15; DI 12-1 at 16; *see Hess v. Gebhard & Co. Inc.*, 808 A.2d 912, 917 (Pa. 2002).

---

³ Mr. Malin and Keystone rely on two non-precedential cases in their motion to dismiss: *Bioquell* and *Herley*. *Oakwood* provides ample guidance for our decision, but *Bioquell* and *Herley* are helpful and consistent with our decision. *See Bioquell, Inc. v. Feinstein*, No. 10-2205, 2010 WL 4751709 (E.D. Pa. Nov. 23, 2010) (granting motion to partially dismiss when plaintiff, by merely reciting elements of claims, insufficiently pled Pennsylvania trade secret misappropriation, breach of contract, breach of fiduciary duty, tortious interference with business relations, and civil conspiracy claims); *Herley Indus. v. R Cubed Eng'g., LLC*, No. 20-2888, 2021 WL 229322 (E.D. Pa. 2021 Jan. 22, 2021) (granting motion to dismiss in part and denying in part where plaintiff generally alleged trade secret misappropriation instead of alleging specific facts, such as how "defendant-employee actively used plaintiff-employer's trade secrets").

⁴ Rule 12(b)(6) dismissal is without prejudice unless the amended complaint would be inequitable or futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (reasoning "even when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time").

Mr. Malin focuses his attack on *Hess*'s fourth element. He argues that an employee's termination inherently means that the employee no longer advances their employer's business interest, meaning the employer has no legitimate business interest as it relates to the terminated employee. DI 10 at 15-16. Accordingly, Mr. Malin argues that Heritage Fence is unable to show that its restrictive covenants were designed to protect its own business interests because, again, Heritage Fence no longer had any legitimate business interest as it relates to Mr. Malin once it terminated him. *Id.* Mr. Malin argues that, since element (4) is not met, there is no enforceable contract, so Heritage Fence's breach of contract claim should be dismissed. *Id.* We disagree.

*Brobston*, a Pennsylvania Superior Court decision, is helpful here. *Insulation Corp. of America v. Brobston*, 667 A.2d 729, 735 (Pa. Super. Ct. 1995). In *Brobston*, the court assessed how an employee's termination for cause could affect the enforceability of a post-employment restrictive covenant, reasoning that when an "employer who fires an employee for failing to perform in a manner that promotes the employer's business interests," that employer "deems the employee worthless." *Id*. Accordingly, a non-competition agreement may be "unreasonable as a matter of law." *Id.* The court explained that "the circumstances under which the employment relationship is terminated are an important factor to consider" but cautioned that any inquiry "regarding post-employment restrictive covenants requires the facts and circumstances of each case to be evaluated with heightened scrutiny." *Id.* at 735-37.

*Missett* added clarification to this point. *Missett v. Hub Int'l Pa., LLC*, 6 A.3d 530, 538 (Pa. Super. Ct. 2010).[5] The *Missett* decision reasoned "the circumstances of termination are,

---

[5] *Missett* also clarifies a related case, *All-Pak, Inc. v. Johnston*, 694 A.2d 347, 352 (Pa. Super. Ct. 1997), which reasoned that a non-compete would be enforceable if "an employee intentionally engaged in conduct that caused his termination" but would not be enforceable if "an

11

alone, not determinative of whether the restrictive covenant is enforceable." *Id*. at 539. According to *Missett*, the correct analysis considers a number of factors in addition to the circumstances of termination, such as the access to confidential and proprietary information, the duration of the restrictive covenant, the possible negative consequences that enforcement of the covenant may have on the employee's ability to earn a living, whether the pool of potential customers was so small that the former employee would have difficulty developing a business on his own, and whether these types of agreements are standard in the industry. *Id.* at 540.

Together, these Pennsylvania authorities counsel against dismissing the breach of contract claim based on Mr. Malin's termination alone because the enforceability question requires an in-depth factual analysis. While Mr. Malin argues that his non-compete is unenforceable because Heritage Fence no longer saw value in him, Heritage Fence may be able to prove that Mr. Malin intentionally performed poorly only to make his non-compete unenforceable. *See* DI 12 at 13. That is the sort of thing we need discovery for. Thus, we will not dismiss the breach of contract claim.

## IV. Conclusion

For the foregoing reasons, the trade secret claims are dismissed, and the breach of contract claims are not.[6] Heritage Fence's complaint is scarce with facts, and it failed to sufficiently plead trade secret misappropriation. The breach of contract claim deserves an in-

---

employer terminated an employee for reasons beyond the employee's control." *Missett* clarified that it would be error for the court to "limit[] its focus to the circumstances of [an employee's] termination" alone. 6 A.3d at 539.

[6] Finally, we note that Heritage Fence also sought a preliminary injunction. We denied this request as premature following oral argument given the lack of substantiation for irreparable harm. DI 19.

depth, fact-intensive analysis based on various factors — one beyond the scope of a motion to dismiss.[7]

---

[7] Our jurisdiction stems from Heritage Fence's trade secret claim under the Defend Trade Secrets Act of 2016, a federal question. And we have supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). While we dismiss the federal question claim, we exercise our discretion to retain jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3) for now.